No. 25-3455

# United States Court of Appeals
# for the Ninth Circuit

---

JANE DOE,

*Plaintiff-Appellant,*

– v. –

WESTERN BEST, INC., doing business as The Chicken Ranch;
WESTERN BEST, LLC; MUSTANG RANCH PRODUCTIONS, LLC,
doing business as Mustang Ranch Lounge, LLC; LEONARD
"LANCE" GILMAN, in his individual capacity; DESERT ROSE CLUB, LLC; and
HACIENDA ROOMING HOUSE, INC., doing business as Bella's Hacienda Ranch,

*Defendants-Appellees,*

– and –

JOSEPH LOMBARDO, Governor of Nevada, in his official capacity;
AARON FORD, Attorney General of Nevada, in his official capacity;
NYE COUNTY; ELKO COUNTY; STOREY COUNTY; and
LEONARD "LANCE" GILMAN, in his official capacity,

*Defendants (Dismissed per ECF 158 Order).*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEVADA IN CASE NO. 3:24-CV-00065-MMD-CSD,
HONORABLE MIRANDA M. DU, DISTRICT JUDGE

## APPELLANT'S OPENING BRIEF

JASON GUINASSO
GUINASSO LAW, LTD
5371 Kietzke Lane
Reno, NV 89511
(775) 853-8746

CHRISTEN M. PRICE
BENJAMIN W. BULL
DANIELLE BIANCULLI PINTER
VICTORIA HIRSCH
NATIONAL CENTER ON SEXUAL
  EXPLOITATION
1201 F Street NW, Suite 200
Washington, DC 20004
(202) 393-7245

*Attorneys for Plaintiff-Appellant*

 (800) 4-APPEAL • (383470)

**CORPORATE DISCLOSURE STATEMENT**

This statement is provided pursuant to Fed. R. App. P. 26.1. There are no

nongovernmental corporation appellants in this case; all appellants are individuals.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ ii

TABLE OF CONTENTS............................................................................. iii

TABLE OF AUTHORITIES ........................................................................ v

INTRODUCTION ....................................................................................1

JURISDICTIONAL STATEMENT ...............................................................3

STATEMENT OF THE ISSUES PRESENTED................................................3

STATEMENT OF THE CASE......................................................................4

  I.  Factual Background ...........................................................4

    A.  The Government Defendants' legalized prostitution system ........4

    B.  Plaintiff Jane Doe's exploitation ...................................7

  II.  Procedural Background...................................................11

STANDARD OF REVIEW ......................................................................14

SUMMARY OF ARGUMENT ...............................................................15

ARGUMENT ...................................................................................19

  I.  By basing its decision in part on the public's interest in
assessing Jane Doe's credibility, the district court relied on an
improper factor. ......................................................................21

  II.  The district court omitted a substantial factor by failing
to consider the physical danger that Jane Doe faces in litigating
against her direct traffickers. .....................................................27

III.    To the extent the district court considered the correct mix of factors, it committed clear errors of judgment by discounting the nonphysical harm to Jane Doe of proceeding publicly, and overstating the prejudice to the Brothel Defendants of Jane Doe proceeding under a pseudonym and protective order.................................33

   A.    The court improperly discounted the nonphysical harm to Jane Doe, as a sex trafficking victim, of proceeding publicly.............................................................................................34

      1.    The court unreasonably discounted Jane Doe's vulnerability, as a sex trafficking victim, to psychological and social harm.................................................................34

      2.    The court mischaracterized facts that Jane Doe alleged.........40

      3.    The court made unsupported legal assertions and mischaracterized some of the case law it did cite. ...........................42

   B.    The court overstated the prejudice to Brothel Defendants of Jane Doe proceeding under a pseudonym and protective order. ............................................................................44

      1.    The court did not precisely weigh the prejudice to Brothel Defendants at this stage in the litigation. ............................45

      2.    The court arbitrarily found potential negative publicity regarding Brothel Defendants to be ultimately determinative. ..................................................................47

CONCLUSION ......................................................................53

STATEMENT OF RELATED CASES ................................................56

CERTIFICATE OF COMPLIANCE ...................................................55

iv

# TABLE OF AUTHORITIES

**Cases:**

*4 Exotic Dancers v. Spearmint Rhino*,
   No. CV 08-4038ABCSSX, 2009 WL 250054
   (C.D. Cal. Jan. 29, 2009) ............................................................. 42, 43

*A.D. v. Cavalier Mergersub LP*,
   No. 2:22-CV-095-JES-NPM, 2022 WL 4354842
   (M.D. Fla. Sept. 20, 2022) ....................................................................30

*A.D. v. Wyndham Hotels and Resorts, Inc.*,
   No. 4:19-CV-120, 2020 WL 5269758 (E.D. Va. Mar. 20, 2020),
   *order clarified*, No. 4:19-CV-120, 2020 WL 8639343
   (E.D. Va. July 30, 2020) ............................................................... 30, 31

*A.T.P. v. MTR Hotels LLC*,
   No. 6:21-CV-647-TMC, 2021 WL 5772826 (D.S.C. Mar. 12, 2021)................31

*C. S. v. Wyndham Hotels & Resorts, Inc.*,
   2021 WL 7448060 (M.D. Fla. June 11, 2021)....................................30

*Discopolus, LLC v. City of Reno*,
   No. 3:17-CV-0574-MMD-VPC, 2017 WL 10900550
   (D. Nev. Nov. 16, 2017) ......................................................................43

*Doe #1 v. MG Freesites, Ltd.*,
   No. 7:21-CV-00220-LSC, 2021 WL 2556009
   (N.D. Ala. Mar. 3, 2021)....................................................................30

*Doe v. Ayers*,
   789 F.3d 944 (9th Cir. 2015) ............................................................26

*Doe v. Baram*,
   No. 20 Civ. 9522, 2021 WL 3423595 (S.D. N.Y. Aug. 5, 2021)......................30

*Doe v. City of Las Vegas*,
   No. 2:19-CV00382-GMN-BNW, 2019 WL 2601554
   (D. Nev. June 25, 2019)......................................................................42

*Doe v Dabbagh*,
    No. 15-CV-10724, 2015 WL 13806540
    (E.D. Mich. May 28, 2015).........................................................30

*Doe (M.H.) v. G6 Hospitality LLC*,
    No. 4:22-CV-00198-SDJ, 2022 WL 2532489
    (E.D. Tex. July 7, 2022).............................................................30

*Doe v. JBF RAK LLC*,
    No. 2:14-CV-00979-RFBGWF, 2014 WL 5286512
    (D. Nev. Oct. 15, 2014).............................................................42

*Doe v. Lombardo*,
    745 F. Supp. 3d 1109 (D. Nev. 2024)........................................17

*Doe v. Penzato*,
    No. CV10-5154 MEJ, 2011 WL 1833007
    (N.D. Cal. May 13, 2011) ............................... 22, 30, 38, 46

*Doe v. Rostker*,
    89 F.R.D. 158 (N.D. Cal. 1981).................................. 43, 44

*Doe v. Steele*,
    No. 20-cv-1818-MMA, 2020 WL 6712214
    (S.D. Cal. Nov. 16, 2020) ..................................... 22, 30, 46

*Doe v. Stegall*,
    653 F.2d 180 (5th Cir. 1981) ............................................22

*Does I thru XXIII v. Advanced Textile Corp.*,
    214 F.3d 1058 (9th Cir. 2000) ................................... passim

*Fan v. Jiang*, No. 3:21-CV-00458-RCJ-CLB, 2023 WL 5846861
    (D. Nev. Sept. 9, 2023), *vacated in part on other grounds*, *Fan v. Jiang*,
    No. 3:21-CV-00458-MMD-CSD, 2025 WL 28133
    (D. Nev. Jan. 2, 2025).............................................................31

*Florida Abolitionist, Inc. v. Backpage.com LLC*,
    No. 6:17-cv-218-Orl-28TBS, 2018 WL 2017535
    (M.D. Fla. May 1, 2018);.........................................................30

*Gentile v. State Bar of Nevada*,
   501 U.S. 1030 (1991); 501 S. Ct. 1028 (1991)....................................24

*Humphries v. Button*,
   No. 2:21-cv-01412-APG-EJY, 2022 WL 744483
   (D. Nev. Mar. 11, 2022)............................................................... passim

*Lytle v. Nutramax Lab'ys, Inc.*,
   114 F.4th 1011 (9th Cir. 2024),
   *cert. denied*, 145 S. Ct. 1308 (2025)............................................ 15, 33

*Microsoft Corp. v. Motorola, Inc.*,
   696 F.3d 872 (9th Cir. 2012) ...............................................................20

*Mitchell v. De Mario Jewelry, Inc.*,
   361 U.S. 288 (1960)...............................................................................22

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
   422 F.3d 78 (9th Cir. 2005) (quoting *SEC v. Coldicutt,* 258 F.3d 939
   (9th Cir. 2001)............................................................................... 20, 51

*Ramsbottom v. Ashton*,
   No. 3:21-CV-00272, 2021 WL 2651188
   (M.D. Tenn. June 28, 2021)..................................................................31

*Richmond Newspapers, Inc. v. Virginia*,
   448 U.S. 555 (1980); 100 S. Ct. 2814 (1980)......................................18

*Roes 1-2 v. SFBSC Mgmt., LLC*,
   77 F. Supp. 3d 990, 993 (N.D. Cal. Jan. 12, 2015)..............................43

*Sears v. Mid Valley Enterprises, LLC*,
   No. 19-CV-00532-APG-DJA, 2021 WL 8015628
   (D. Nev. Dec. 8, 2021)................................................................ passim

*United States v. Doe*,
   488 F.3d 1154 (9th Cir. 2007) .............................................................20

*Williams v. Sisolak*,
  No. 2:21-CV-01676-APG-VCF, 2022 WL 2819842
  (D. Nev. July 18, 2022).........................................................................................51

**Statutes:**

18 U.S.C. § 3771(a)(8).............................................................................................23

18 U.S.C. §1595(a) .............................................................................................3, 23

28 U.S.C. §1291 ........................................................................................................3

28 U.S.C. §1331 ........................................................................................................3

42 U.S.C. § 1994 ....................................................................................................17

**Other Authorities:**

U.S. Const. amend. XIII............................................................................................3

## INTRODUCTION

It takes enormous courage for a person to stand up to her sex traffickers. Challenging people who profit from violence is always a risky proposition, especially where the abusers enjoy official protection.

Jane Doe has taken just such a risk: bringing claims against the legal brothels that sex trafficked her directly, including one operated by a government official, and another operated by a pimp who brandished and shot his gun and also allowed members of organized crime in the brothel. ER-37, 39—43. Jane Doe has been threatened by her pimps and their associates and contacted by people with gang affiliations. *Id.* Another sex buyer has attempted to discover her identity since she filed this case. ER-103—106. She has also sued the government entities (including the one once partly staffed by the pimp) that licensed and otherwise enabled and profited from the brothels. ER-4—8.

These defendants responded exactly the way one might expect, given the claims at issue: filing a deluge of motions before they had even been served with the complaint – the very first being a demand that the court dismiss the case for being filed under a pseudonym – pre-emptively filing a motion to prevent Plaintiff's counsel from appearing *pro hac vice*, and vehemently opposing a protective order on the grounds that it would limit their ability to invite an extrajudicial media inquiry into Plaintiff. *See* ER-94—101. Defendants made their intent to retaliate abundantly

1

clear from the outset, which the court, far from seeing this as a warning sign, validated.

Although lawsuits are ordinarily entirely public, including parties' names, vital exceptions protect parties who face unusual hazards. *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000). Defying Ninth Circuit precedent, the district court sided with the pimps and their protection racket, forcing Jane Doe to choose between disclosing her name on the public docket or the court dismissing the case. ER-66.

The implications are chilling: either a sex trafficking survivor must put herself fully on the line, without even the protections commonly afforded a business's trade secrets, or the worst human rights abusers will go completely free.[1] The court thus demanded that Jane Doe choose between her own safety and impunity for the brothels, which is not a decision this Circuit's precedent could have ever justified the court in making.

Nevada's legal brothel regime is at its core a systemic violation - with government complicity - of one of the constitution's most fundamental guarantees. Jane Doe's safety and the public's interest in civil rights cases being brought tip the

---

[1] Jane Doe has alleged the government is the chief enabler in this system, ER-4, 18—22, so she has little hope of a criminal prosecution, making civil litigation the only true recourse.

2

scale too firmly on the side of protection for the court's contrary conclusion to be anything but an abuse of discretion.

Accordingly, Plaintiff Jane Doe requests that this Court reject the district court's ruling denying her the right to proceed under a pseudonym and protective order.

## JURISDICTIONAL STATEMENT

The district court has jurisdiction based on 28 U.S.C. §1331, as well as 18 U.S.C. §1595(a), and U.S. Const. amend. XIII. On April 25, 2025, the district court entered an order dismissing without prejudice Plaintiff's remaining claims against the Brothel Defendants for failure to file a notice on the public docket disclosing her identity. ER-83. On April 28, 2025, the District Court entered an order directing an entry of final judgment in favor of the Brothel Defendants, thereby closing this case. ER-84. On May 28, 2025, Plaintiff filed her notice of appeal. ER-85—88. This Court has jurisdiction based on 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES PRESENTED

Plaintiff Jane Doe was sex trafficked by legal brothels in Nevada. She sued the brothels and the government entities that licensed, enabled, and profited from them. She still suffers the traumatic effects of serial sexual abuse, and if her identity was public, would face further psychological harm and invasion of her privacy. She would also face physical danger from sex buyers, criminal gangs, and others who

3

exploited her, as well as stigmatization and harassment from the general public due to her background in prostitution.

While this case was still at the motion to dismiss stage, Plaintiff sought to proceed under a pseudonym and protective order, which would have given Defendants access to her identity and information, but limited the ways in which they could use it. The court denied the motion, deciding that potential negative press about the brothels outweighed both Jane Doe's need for protection, and the public's interest in civil rights cases being decided on their merits. Did the district court abuse its discretion?

## STATEMENT OF THE CASE

### I. Factual Background

#### A. The Government Defendants' legalized prostitution system

Plaintiff Jane Doe alleged that the State of Nevada, and Nye, Elko, and Storey Counties, along with multiple brothels located in those counties, engaged in a scheme to enable, facilitate, and profit from a legalized system of prostitution, through which she was sex trafficked, violating the Thirteenth Amendment and federal sex trafficking laws. ER-4—5.

Nevada permits prostitution in rural counties, but does not enforce its own regulations limiting prostitution advertising to counties where prostitution is legal, which drives up demand for sex-buying, leading to sex trafficking. ER-29. The State

forces prostituted people to submit to weekly STI testing, but does not require sex buyers to undergo any testing. ER-19.

Nevada's economy is heavily dependent on tourism, including sex tourism, and the sex trade in Nevada – disproportionately large for the state's size – is intertwined with both the government's and many industries' financial fortunes. ER-30—32, 44, 46. Nevada has had significant problems with corruption, for example: there have been recent federal probes into the Las Vegas police for collaborating with the pimps/sex traffickers they were ostensibly investigating. ER-30. The Government Defendants do not meaningfully investigate or prosecute sex trafficking in the brothels. ER-29—30.

Nevada allows counties to regulate themselves, even though a brothel owner, Defendant Lance Gilman, sat on the county commission that regulates the brothels. ER-26—27. The Counties directly profit from brothel prostitution though licensing fees and taxes. ER-27—28.

In the legal brothels, which are typically surrounded by high fences and commonly in geographically isolated areas, women are subjected to a number of practices that amount to debt bondage, including:

- Being locked inside the brothels and not allowed to leave for weeks at a time;

- Having to give the brothel 50% of their earnings;

5

- Being required to follow the brothel's rules or face severe fines; and

- Being forced to live on the premises and pay the brothels for room and board to do so.

ER-21.

Plaintiff Jane Doe was sex trafficked in Nevada through its legalized prostitution regime from 2017 to 2023 by the Brothel Defendants. ER-33. She was never screened for sex trafficking by Defendants Nye, Elko, or Storey Counties. Local law enforcement did not inspect brothels, except to ensure that the women were being subjected to STI testing and had brothel license cards. ER-33. Plaintiff was not allowed to keep her own brothel card. ER-33.

Nye County not only permits brothel prostitution but does not ban compelling someone to engage in prostitution, if it occurs in a brothel. ER-22. Nye, Storey, and Elko Counties prevent prostituted people from operating independently, as they must be associated with a particular brothel to be licensed. ER-22—23, 25. In Storey County, prostituted people may only have a work card for one brothel at a time. ER-26. Nye, Elko, and Storey Counties require weekly STI examinations for prostituted persons, but not for sex buyers. ER-23—24, 26. In Elko County, if a prostituted person tests positive, they are required to be detained at the brothel until contacted by the State Board of Health. ER-24. This is extrajudicial detention at a brothel by operation of law.

The Storey County brothel licensing board, consisting of county commissioners and the sheriff, has total authority to grant or deny brothel licenses. ER-25. Defendant Lance Gilman owns Mustang Ranch brothel in Storey County, and when the lawsuit was filed, sat on the Storey County Board of Commissioners. ER-26. As a member of the Board, Gilman regulated brothels, including his own brothel. ER-27. Gilman bragged in the brothel about having all of Reno under his control, and has played an extensive role in Storey County's economic development, claiming that he purchased the brothel to boost Storey County's tax revenues. ER-27—28, 39.

### B.     Plaintiff Jane Doe's exploitation

Defendant Chicken Ranch took 50% of the fees Plaintiff earned and charged her $45 daily for room and board. ER-34. Jane Doe was required to pay for food even when she was unable to eat it for health reasons. ER-34. She was forced to pay percentages of the transportation fees for buyers going to the brothel. ER-34. She was forbidden from having any cash on her person or in her room at any time, or she would forfeit all the money in her account to Chicken Ranch. ER-34. The brothel had a barbed wire fence surrounding the property, and the exit and entry gate was controlled by Chicken Ranch managers. ER-35. She was required to get permission to go outside. ER-35.

Women at the brothel were subjected to searches when they first arrived and whenever they left for one day or longer, and their phones and emails would be searched by Chicken Ranch at any time. ER-35. Chicken Ranch controlled and sometimes denied Jane Doe's access to her medications. ER-35—36. Chicken Ranch discouraged Jane Doe from using the panic buttons in the rooms, and did not call security or the police when women reported violent and threatening sex buyers. ER-36.

Defendant Desert Rose took 50% of the fees Jane Doe earned, and in addition charged a $50 weekly cleaning fee for work Plaintiff and the other women had to do themselves. ER-37. Plaintiff was required to work 12 hours a day, amounting to 72 hours per week, although women who were there long-term were permitted a weekly day off. ER-37. Plaintiff only had 3 minutes to respond to a lineup call,[2] or else risked getting fined $100. ER-37. Local law enforcement visited the brothel weekly, but did not talk to the women or assess whether they were being forced, coerced, or defrauded into being there, or otherwise address their working conditions. ER-38. Brothel owner Gabe Ornelas shot his gun in the brothel and was simply reprimanded by the authorities. ER-37. Ornelas bragged openly about paying money under the

---

[2] The brothel lineup is when all the prostituted women are required to line up so that a sex buyer can choose which one of them he is going to use.

table to Elko County officials to protect his brothel. ER-38. Members of organized crime were permitted in the brothel as well. ER-38. Jane Doe was threatened by Ornelas and contacted by people with gang affiliations. ER-38.

At Defendant Bella's, Plaintiff was not required to have any kind of license. ER-38. Bella's took 50% of the fees that she got from sex buyers, and required payments from Plaintiff for room and board, and fees for cooking or using the brothel's silverware. ER-38. Jane Doe was not allowed to leave at will, and her requests to leave were sometimes denied. ER-38—39. Bella's tracked Plaintiff's movements, requiring her to tell the brothel where she was at all times. ER-39. Bella's withheld Jane Doe's final paycheck as a punishment for leaving. ER-39.

Defendant Mustang Ranch forced Plaintiff in her initial intake interview to sign a nondisclosure agreement and legal agreement stating that she was not being trafficked. ER-39. Mustang Ranch employees laughed about trafficking during this process. ER-39. Instead of asking for a woman's ID before issuing her a brothel card, the Storey County Sheriff would accept a piece of paper with Mustang Ranch's name on it, saying the woman was employed by the brothel. ER-39. Jane Doe and the women with her were in and out of the Sheriff's office in about 5 minutes, without being asked any questions. ER-40. When Jane Doe remarked on this, Mustang Ranch's driver warned her to stop talking. ER-40.

At Mustang Ranch, Plaintiff was not allowed to keep personal belongings in her room and she was closely monitored, with the brothel seizing part of her contract copy when they realized she was keeping track of their actions. ER-40. Mustang Ranch took 50% of Plaintiff's fees from the sex buyers, and charged her for laundry, room and board, and limousine services. She would be fined $1,500 if she missed responding to a lineup. ER-40. She was forced to work at least 12-hour shifts, and had to get permission to take a nap or go to the bathroom. ER-40. Mustang Ranch had locked gates, and Plaintiff was not allowed to leave by herself and had to obtain permission to go even outside into the gated yard. ER-41. The brothel would change the gate codes to make doubly sure that Jane Doe and the other women could not leave when they wished. ER-41. If Jane Doe left with anyone other than Mustang Ranch's driver, the brothel would force Plaintiff to pay for and submit to another STI exam. ER-41.

Jane Doe was once forced to stay in a part of the Mustang Ranch brothel that lacked basic amenities, such as running water and working lights, and was also threatened by the brothel's live-in attorney. ER-42—43. When she was kicked out of Mustang Ranch, she was forcibly escorted out, forced to take only what she could fit in two small bags, and was never permitted to retrieve her clothing, personal documents, laptop, or final paycheck. ER-43.

10

## II.    Procedural Background

Plaintiff Jane Doe filed this case in February 2024, against the State, through Nevada Governor Joseph Lombardo, in his official capacity, and Nevada Attorney General Aaron Ford, in his official capacity (State Defendants); Nye County, Elko County, Storey County, and Leonard "Lance" Gilman, in his official capacity (County Defendants); Western Best, Inc. d/b/a Chicken Ranch; Western Best, LLC (Chicken Ranch); Desert Rose Club, LLC (Desert Rose); Hacienda Rooming House, Inc. d/b/a Bella's Hacienda Ranch (Bella's); Mustang Ranch Productions, LLC (Mustang Ranch); and Leonard "Lance" Gilman, in his individual capacity (collectively, "Brothel Defendants"). ER-6—8. Together, the State Defendants and County Defendants are referred to as "Government Defendants." Plaintiff alleged that Defendants violated the Thirteenth Amendment and the Trafficking Victims Protection Act (TVPRA) by engaging in, enabling, and profiting from sex trafficking. ER-44—46.

On February 25, 2024, County Defendants filed a motion to dismiss for improper use of a pseudonym resulting in a lack of subject matter jurisdiction. ER-94. Defendants Leonard "Lance" Gilman, Mustang Ranch, and Desert Rose joined the motion. ER-95. On May 30, 2024, per the Court's deadline, ER-98—99, Plaintiff moved to proceed under a pseudonym and for a protective order. ER-99—100. The

11

County Defendants opposed the motion, joined by the State Defendants and the Brothel Defendants. ER-100.

On August 16, 2024, the district court denied the motion to dismiss for improper use of a pseudonym. ER-103. The court also dismissed the Government Defendants from the case, finding that Plaintiff "lacked Article III standing to bring claims" against Government Defendants." ER-52—53. The Court entered final judgment for the Government Defendants with prejudice on February 21, 2025. ER-108. Plaintiff filed her notice of appeal on March 21, 2025; this appeal is still pending. ER-163.

The court also dismissed the claims for declaratory and injunctive relief against the Brothel Defendants, finding Plaintiff lacked standing to seek prospective relief and could not assert third party standing, and ordered Plaintiff to show cause as to her standing to seek damages against the Brothel Defendants. ER-53.

On October 18, 2024, the district court found that Jane Doe satisfied the order to show cause and allowed the case to proceed against the Brothel Defendants, but denied the motion for a protective order and leave to proceed pseudonymously. ER-106. Despite "afford[ing] some weight to Doe's argument that disclosure of her identity will make her vulnerable to sex buyers hoping to track her down" and "that sex trafficking itself creates a 'psychological vulnerability,'" it ruled that "Plaintiff's interest in anonymity" did not "outweigh[] the public[] interest in open proceedings

12

and the prejudice to Defendants which would result under a protective order." ER-62, 65. A sex buyer had attempted to intervene in the litigation and to discover Jane Doe's identity by this point in the proceedings. ER-103—106.

The court ordered Plaintiff to file a notice disclosing her identity within fifteen days of the order, or her claims would be dismissed without prejudice. ER-66. The court also ordered the remaining Brothel Defendants that had not answered Plaintiff's Complaint to file an answer or response within fifteen days of Plaintiff's notice. ER-66.

Plaintiff moved for reconsideration or, in the alternative, for interlocutory appeal on November 1, 2024, ER-106, which Chicken Ranch opposed, ER-107. With her motion, Plaintiff Jane Doe submitted a declaration affirming several facts alleged in the Complaint relating to the risks she faces from the Brothel Defendants, sex buyers, and the public, Pls. Mot. For Reconsideration, *Doe v. Lombardo*, Dkt. No. 145 (Nov. 1, 2024), Exh. A, as well as new facts including some discovered after she filed her motion for a protective order. She has had at least one sex buyer subject her to abuse after she left the brothels, and she never used her real name, but a stage name for safety reasons while at the brothel. *Id.* at ¶¶ 32-36. She offered to provide further evidence regarding her risk of physical danger for in-camera review. *Id.* at ¶ 37.

13

The district court denied Plaintiff's motion for reconsideration on April 4, 2025, and again ordered Plaintiff file a notice disclosing her identity within fifteen days of the order. ER-108. Plaintiff Jane Doe did not disclose her name on the public docket. On April 25, 2025, the district court ordered the case dismissed without prejudice as to all remaining claims and Defendants, ER-109, and entered final judgment for the Brothel Defendants on April 28, 2025, ER-109. Plaintiff filed her notice of appeal on this issue on May 28, 2025. ER-110.

## STANDARD OF REVIEW

The Ninth Circuit "review[s] a district court's case management decisions for an abuse of discretion." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1069 (internal citations omitted). This includes decisions denying the right to proceed pseudonymously. *Id.*

This means that the Ninth Circuit "may reverse the district court's decision if the district court relied on an erroneous view of the law, made a clearly erroneous assessment of the evidence, or struck an unreasonable balance of the relevant factors." *Id*.

In other words, if the district court uses "the correct legal standard," it "abuses its discretion only if it (1) relies on an improper factor, (2) omits a substantial factor, or (3) commits a clear error of judgment in weighing the correct mix of factors."

14

*Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1023 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1308 (2025) (cleaned up).

## SUMMARY OF ARGUMENT

This case presents a fundamental question about access to justice: can a sex trafficking survivor be forced to choose between her physical safety and her constitutional right to seek redress for human rights violations? The district court's decision creates exactly this impossible choice, forcing Jane Doe to either expose herself to physical danger from her traffickers, their associates, and hundreds of sex buyers, or allow those who profited from her sexual exploitation to escape accountability entirely.

Plaintiff Jane Doe has alleged that Nevada hosts an ecosystem where slavery thrives: private and public actors have cultivated and enabled an environment hospitable to sexual abuse for profit, in which she was sex trafficked by legal, licensed brothels. Plaintiff Jane Doe sued the legal brothels that sex trafficked her in prostitution through force and coercion, including physical restraint, debt, psychological manipulation, and controlling her access to her property and documents. Plaintiff also sued the government entities that permitted, licensed, regulated, incentivized, and profited from the legal brothels. ER-18—46.

Jane Doe requested to proceed under a pseudonym and protective order due to her concerns about physical danger from her traffickers, their associates, and sex

buyers, as well as the likelihood of severe harassment, social stigmatization, and exacerbation of her current psychological trauma if she litigated under her legal name. When Jane Doe sought these basic protections—routinely granted to trafficking survivors across federal courts—the district court denied her request and dismissed the case when Jane Doe did not reveal her name on the public docket.

Instead of applying the Ninth Circuit's established balancing test, the court substituted an improper factor: the public's supposed right to assess a victim's credibility. The court ignored Jane Doe's undisputed evidence of physical danger from traffickers who carried weapons, had organized crime connections, and enjoyed government protection. And the court prioritized the brothels' apparent desire to conduct media investigations of their victim over Jane Doe's fundamental safety.

In the Ninth Circuit, a party may proceed anonymously when "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1068. A plaintiff may use a pseudonym in "the unusual case when nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule or personal embarrassment." *Id.* at 1068 (cleaned up).

A district court assessing a request for pseudonymity "abuses its discretion only if it (1) relies on an improper factor, (2) omits a substantial factor, or (3)

commits a clear error of judgment in weighing the correct mix of factors." *Lytle*, 114 F.4th at 1023 (cleaned up); *see also Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1069 (finding district court abused its discretion by "failing to consider evidence of threatened retaliation by parties not before the court; concluding that risks of extraordinary economic injury are insufficient as a matter of law to satisfy plaintiffs' burden; failing to consider as a factor plaintiffs' vulnerability to retaliation; failing to identify specific prejudice to defendants; and failing to decide whether the public's interest was best served by requiring plaintiffs to reveal their identities[.]").

In weighing both standing as to the government defendants, *see Doe v. Lombardo*, 745 F. Supp. 3d 1109 (D. Nev. 2024), and identity protections for Jane Doe, ER-55—65, the court has treated this case like an employment dispute, rather than the sex trafficking case that it is. Even if the court insists on categorizing sexual exploitation as a form of labor, whether debt could be used to coerce that labor was a question settled well over a century ago. *See* 42 U.S.C. § 1994. It is not a "contract enforcement practice," it is a crime. ER-11.

It is not necessary for a victim to prove physical danger under this standard. Yet Jane Doe does allege that she is in danger. By summarily disregarding this allegation, the court disregarded the weight of federal precedent supporting identity protections for trafficking victims. *See, e.g.*, *Humphries v. Button*, No. 2:21-cv-

01412-APG-EJY, 2022 WL 744483 (D. Nev. Mar. 11, 2022) (granting trafficking survivor the right to proceed under a pseudonym and for a protective order), as well as case law in this district supporting protections for a plaintiff who had been in a Nevada legal brothel, due to the stigma surrounding prostitution; *Sears v. Mid Valley Enterprises, LLC*, No. 19-CV-00532-APG-DJA, 2021 WL 8015628 (D. Nev. Dec. 8, 2021) (allowing plaintiffs to pseudonymously sue a Nevada brothel for failing to pay minimum wage and overtime wages).

The court below also erroneously substituted its own concept of a public right to scrutinize early-stage litigants' personal credibility for this Circuit's actual standard: the general principle that proceedings should be open, in particular to hold government actors accountable, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 592 (1980); 100 S. Ct. 2814 (1980), and to incentivize victims of crimes and civil rights abuses to come forward, so that their cases can be decided on the merits, *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1073.

And the court ultimately found that prejudice to Defendants tipped the scales toward subjecting a sex trafficking victim to public exposure, despite Plaintiff's request for a protective order that would have supplied Defendants with any information necessary for their defense, because the court agreed with the Defendants that it might be hard for them to garner media support for themselves without naming her.

18

But the brothels' reputations should not matter more than Jane Doe's. And more to the point, a pimp's public image should rank somewhat below Jane Doe's very life. The court abused its discretion by striking an unreasonable balance between Jane Doe's need for protection, the public's interest in civil rights cases being decided on their merits, and any potential prejudice to the Brothel Defendants.

This case is ultimately about whether a sex trafficking victim should be forced to choose between physical safety for herself and impunity for her abusers. Because the court below refused to consider factors required by this Circuit's rule and substituted factors that are not part of the standard, its pseudonymity and protective order analysis should be rejected, its denial of Plaintiff's motion to proceed under a pseudonym and protective order and related dismissal should be reversed, and the case should be remanded.

## ARGUMENT

Although Rule 10(a) requires a complaint to name all the parties, in the Ninth Circuit, a party may proceed anonymously when "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1068.

A plaintiff may use a pseudonym in "the unusual case when nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule

19

or personal embarrassment." *Id.* at 1067-68 (cleaned up). *See also United States v. Doe*, 488 F.3d 1154, 1155 n. 1 (9th Cir. 2007).

Assuming the district court uses "the correct legal standard," it "abuses its discretion only if it (1) relies on an improper factor, (2) omits a substantial factor, or (3) commits a clear error of judgment in weighing the correct mix of factors." *Lytle,* 114 F.4th at 1023 (cleaned up). *See also Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir. 2012) ("Rather, the scope of our review limits us to determining whether the trial court reached a decision that falls within any of the permissible choices the court could have made"); *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.,* 422 F.3d 782, 798 (9th Cir. 2005) (quoting *SEC v. Coldicutt,* 258 F.3d 939, 941 (9th Cir. 2001) ("The abuse of discretion standard requires that we 'not reverse a district court's exercise of its discretion unless we have a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached.'").

Plaintiff argues that the district court abused its discretion in denying her motion to proceed under a pseudonym and for a protective order by: I) relying on an improper factor by basing its decision in part on the public's interest in assessing Jane Doe's credibility; II) omitting a substantial factor by failing to consider the physical danger that Jane Doe faces in litigating against her direct traffickers and their enablers; and III) committing clear errors of judgment by discounting the

20

nonphysical harm to Jane Doe of proceeding publicly, and overstating the prejudice to the Brothel Defendants of Jane Doe proceeding under a pseudonym and protective order.

## I. By basing its decision in part on the public's interest in assessing Jane Doe's credibility, the district court relied on an improper factor.

Under *Advanced Textile*, as discussed above, the district court must weigh a party's privacy interests against "prejudice to the opposing party and the public's interest in knowing the party's identity." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1068.

The public has an interest in open proceedings, but as the Supreme Court has explained, the main value behind having open legal proceedings is the public's ability to scrutinize the *government*, not the litigants. *See Richmond Newspapers, Inc.*, 448 U.S. at 592 (cleaned up) ("[O]pen trials are bulwarks of our free and democratic government: public access to court proceedings is one of the numerous checks and balances of our system, *because contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power*[.]") (emphasis added).

Indeed, "[p]arty anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued

under a fictitious name." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) (cited with approval in *Advanced Textile Corp.*)

The public also has an interest in civil rights cases being decided on their merits, because such lawsuits "benefit the general public[.]" *Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d at 1073 (permitting pseudonymity, in part due to the public interest in seeing employment rights cases decided on their merits, which requires protecting plaintiffs from potential retaliation from employers). The Supreme Court has affirmed that "fear of . . . reprisals will frequently chill [a person's] willingness to challenge . . . violations of their rights." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1073 (citing *Mitchell v. De Mario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)). Measures that may have a chilling effect on a party's willingness to litigate "violations of statutes are generally considered against public policy." *Id.*

Courts in this circuit have applied this exact reasoning to allow sexual assault survivors to litigate under pseudonyms, finding "that the public's interest in allowing alleged victims of sexual assault to proceed anonymously outweighs the public's interest in disclosing Plaintiff's identity." *Doe v. Penzato*, No. CV10-5154 MEJ, 2011 WL 1833007, at *5 (N.D. Cal. May 13, 2011); *see also Doe v. Steele*, No. 20-cv-1818-MMA, 2020 WL 6712214, at *4 (S.D. Cal. Nov. 16, 2020) (permitting sex trafficking survivor to proceed under a pseudonym) ("Proceeding anonymously

22

'serves strong public interest because other victims will not be deterred from reporting such crimes.' Additionally, the public interest is not threatened by withholding a plaintiff's identity where 'there is nothing about the Plaintiff's identity which makes it "critical to the working of justice" and the basic facts of the case will be on public record.'").

Relatedly, federal public policy not only encourages sex trafficking victims to seek recourse through civil courts under 18 U.S.C. § 1595(a), but also contains explicit protections for crime victims, including their privacy, 18 U.S.C. § 3771(a)(8) ("The right to be treated with fairness and with respect for the victim's dignity and privacy."). Like the suit in *Advanced Textile Corp.,* this case is premised on a federal statute designed to encourage sex trafficking victims to come forward and seek redress in federal court. *Cf.* 214 F.3d at 1073. Thus, the public has a particular interest in seeing this case decided on its merits.

Yet the court found that the public interest factor was "neutral or weighs slightly in Defendants [sic] favor," because the public "has an interest in assessing Doe's credibility, especially where the underlying claims arise in the context of a legal prostitution regime enacted by an elected legislature." ER-64.

But the public ability to assess a sex trafficking victim's credibility is not among the factors for determining pseudonymity in this Circuit, *see Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1068, 1072-73. The public interest in

openness and transparency in judicial proceedings is not the same as a public right to assess a litigant's credibility.

Assessing credibility only becomes relevant for members of the public at a jury trial, which is governed by the Federal Rules of Evidence, which limits what information the jury can access. Trial publicity rules limit what can be publicly said about a case on the eve of trial, because it could unfairly prejudice jurors against a litigant. *See, e.g.*, *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1033-34 (1991); 501 S. Ct. 1028 (1991) (discussing the constitutionality and purposes of Nevada's pretrial publicity rule). This case, of course, is nowhere near trial, and was still at the motion to dismiss stage when the motion for pseudonymity and for a protective order was filed. ER-94—100.

It is not clear why the district court thought that the public interest *disfavored* anonymity specifically in a case about "a legal prostitution regime enacted by an elected legislature," ER-64, when under *Advanced Textile* exactly the opposite is true: the public has a particular right in seeing sex trafficking cases decided on their merits, especially if the violations at issue were enabled by a legal system.

There is undoubtedly a public interest in constitutional laws, and the court cited no authority for the proposition that in a civil rights challenge to an allegedly unconstitutional legal regime, the public has a greater interest in knowing the victim's name than in seeing the case proceed. ER-64. The idea that a person should

24

receive fewer protections if they dare to confront a government regime, especially one they maintain is unconstitutional and abusive, runs absolutely counter to the public interest.[3] This is even more true when the violation at issue concerns something as fundamental as the right to be free from slavery. ER-4—5.

In concluding the contrary, the Court seems to be following Defendants, rather than any legal authority, as Defendants made this argument repeatedly in their filings. *See, e.g.*, Defs. Mot. to Dismiss, *Doe v. Lombardo*, Dkt. No. 5 at *14 (Feb. 25, 2024) ("And here one simply cannot deny the enormous political dimension and gravity of this suit. It is the public importance of this suit, more than anything, which demands that this Plaintiff be revealed."); *Id.* at 5 (asserting that a person should not be able to level "serious charges against a government entity" and not be forced to publicly reveal their identity); Defs. Response to Pls. Mot. For a Protective Order, *Doe v. Lombardo*, Dkt. No. 75 at *9-10 (Jun 7, 2024) (internal citations omitted) ("And let us not overlook, Plaintiff also sued a public figure here in Nevada, in the form of Defendant Lance Gilman, in both his official capacity as a county commissioner and in his individual capacity as a brothel owner, just to assure the maximum interest from the public and the press in this suit. Such Machiavellian

---

[3] This position is especially untenable given that the court, as it pointed out itself, has dismissed the Government Defendants and all the injunctive relief claims. ER-84.

tactics come at a cost, the most prominent of which is not being allowed to proceed anonymously.").[4]

Just as in *Advanced Textile*, the district court "did not explain . . . how disguising plaintiffs' identities will obstruct public scrutiny of the important issues in this case." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1072; *see also Doe v. Ayers*, 789 F.3d 944, 946 (9th Cir. 2015) (cleaned up) ("Finally, we concluded that the public's interest in the case was not best served by requiring that the litigants reveal their identities, because here, party anonymity did not significantly obstruct the public's view of issues [.]").

Thus, the court not only failed to identify how the public would be unable to understand and scrutinize the issues in this case if Plaintiff proceeded as a Jane Doe, it substituted an improper factor – public assessment of Jane Doe's credibility – for the Ninth Circuit's actual rule.

---

[4] They also suggested that people in legal brothel prostitution deserve fewer privacy protections than other people. *See, e.g.*, Defs. Mot. to Dismiss, *Doe v. Lombardo*, Dkt. No. 5 at *18 (inviting the court to "remove her mask" and stating that "[i]n the face of such allegations, the public interest outweighs any privacy concerns, which were largely forfeit when this Plaintiff deemed to become a licensed 'sex worker.'"). With these threatening remarks, Defendants seem particularly keen to intimidate Plaintiff for daring to challenge a system to which Nevadans are deeply committed. The court's unsupported comment about the public interest suggests a similar sentiment. ER-64.

Accordingly, because the Ninth Circuit's standard for permitting a party to proceed pseudonymously does not include a general public right to evaluate a victim's credibility, the court abused its discretion and relied on an improper factor in denying Plaintiff's motion to proceed under a pseudonym and protective order.

## II. The district court omitted a substantial factor by failing to consider the physical danger that Jane Doe faces in litigating against her direct traffickers.

Under *Advanced Textile*, a court must consider whether the party faces "harassment, injury, ridicule or personal embarrassment." *Id.* at 1068 (cleaned up). In cases where "pseudonyms are used to shield the anonymous party from retaliation," the district court must evaluate: "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, and (3) the anonymous party's vulnerability to such retaliation [.]" *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1068 (cleaned up).

The Ninth Circuit found the district court had abused its discretion by denying pseudonymity to garment workers who were victims of coercive labor conditions; the court "evaluated the severity of the threatened injury to plaintiffs, but in doing so, it improperly discounted much of plaintiffs' evidence." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1070.

So too here: as a sex trafficking survivor of legal prostitution in Nevada's brothels, Jane Doe would face "harassment, injury, ridicule or personal

27

embarrassment," *Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d at 1068 (cleaned up), if her name became public, yet the court "improperly discounted much of [her] evidence."

In fact, in this case, the court did not even evaluate the "severity of the threatened harm" to Plaintiff but ignored Plaintiff's physical safety altogether, even though it was the most substantial factor at issue. ER-59—64. Plaintiff Jane Doe averred that she was sex trafficked by the Brothel Defendants, with government actors both directly involved and complicit, in contexts where organized crime and deadly weapons were present. ER-18—46. Brothel owner Gabe Ornelas shot his gun in the brothel and was simply reprimanded by the authorities. ER-37. Ornelas also bragged openly about paying money under the table to Elko County officials to protect his brothel. ER-38. Members of organized crime were permitted in the brothel as well. ER-38. Jane Doe was threatened by Ornelas and contacted by people with gang affiliations. ER-38. She additionally faces dangers from the hundreds of sex buyers who are also implicated in her trafficking. Pls. Mot. For Reconsideration, *Doe v. Lombardo*, Dkt. No. 145 (Nov. 1, 2024), Exh. A at ¶¶ 33-37.[5]

---

[5] While the court did mention the possibility of sex traffickers trying to "track her down," it seemed to characterize this as purely a concern about social stigma, not violence. ER-62—63.

Trafficking survivors face retaliation risks from multiple sources simultaneously. As alleged in this case, Jane Doe's traffickers included individuals who carried weapons in the brothels, had connections to organized crime, and enjoyed protection from corrupt government officials. ER-37—38. The systematic nature of trafficking also creates unique identification risks, as victims often cannot identify all participants in their exploitation or predict which individuals might pose ongoing threats. Sex buyers, in particular, typically remain anonymous to victims during the abuse, making it impossible to assess or mitigate specific risks from this population.

The nature of legal prostitution in Nevada further heightens these concerns. As alleged in this case, Nevada's regulatory system creates economic incentives for government officials to protect brothel operations rather than trafficking victims. ER-26—32. When law enforcement and regulatory authorities profit from the very enterprises that engage in trafficking, survivors face the additional risk that official channels for protection will be compromised or hostile.

The court's approach contrasts with the standard federal approach of permitting trafficking victims to proceed under a pseudonym, including in the district where this case was brought and elsewhere within the Ninth Circuit. *See, e.g.*, *Humphries v. Button*, No. 2:21-cv-01412-APG-EJY, 2022 WL 744483 (D. Nev. Mar. 11, 2022) (granting trafficking survivor the right to proceed under a pseudonym

29

and for a protective order); *Doe v. Penzato*, No. CV10-5154 MEJ, 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011) (same); *Doe v. Steele*, No. 20-CV-1818-MMA, 2020 WL 6712214 (S.D. Cal. Nov. 16, 2020) (same); *see also A.D. v. Cavalier Mergersub LP*, No. 2:22-CV-095-JES-NPM, 2022 WL 4354842, at *2 (M.D. Fla. Sept. 20, 2022) (permitting sex trafficking victim to use pseudonym in public pretrial filings); *C. S. v. Wyndham Hotels & Resorts, Inc.*, 2021 WL 7448060, at *15 (M.D. Fla. June 11, 2021) (same); *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-120, 2020 WL 5269758, at *3 (E.D. Va. Mar. 20, 2020), *order clarified*, No. 4:19-CV-120, 2020 WL 8639343 (E.D. Va. July 30, 2020) (same); *Doe v Dabbagh*, No. 15-CV-10724, 2015 WL 13806540 (E.D. Mich. May 28, 2015) (granting sex trafficking survivor the right to proceed pseudonymously); *Doe (M.H.) v. G6 Hospitality LLC*, No. 4:22-CV-00198-SDJ, 2022 WL 2532489 (E.D. Tex. July 7, 2022) (granting sex trafficking survivor's unopposed motion to proceed under a pseudonym and protective order); *Doe #1 v. MG Freesites, Ltd.*, No. 7:21-CV-00220-LSC, 2021 WL 2556009 (N.D. Ala. Mar. 3, 2021) (granting sex trafficking survivor's motion to proceed under a pseudonym and protective order); *Florida Abolitionist, Inc. v. Backpage.com LLC*, No. 6:17-cv-218-Orl-28TBS, 2018 WL 2017535 (M.D. Fla. May 1, 2018); (granting sex trafficking survivor's unopposed motion to proceed under a pseudonym and protective order); *Doe v. Baram*, No. 20 Civ. 9522, 2021 WL 3423595 (S.D. N.Y. Aug. 5, 2021) (same); *A.D. v. Wyndham*

*Hotels and Resorts, Inc.*, No. 4:19-CV-120, 2020 WL 5269758 (E.D. Va. Mar. 20, 2020), *order clarified*, No. 4:19-CV-120, 2020 WL 8639343 (E.D. Va. July 30, 2020) (same); (*A.T.P. v. MTR Hotels LLC*, No. 6:21-CV-647-TMC, 2021 WL 5772826 (D.S.C. Mar. 12, 2021) (granting sex trafficking survivor's motion to proceed pseudonymously).[6]

And even where plaintiffs do not allege sex trafficking, the District of Nevada has ruled that the danger posed by sex buyers merits privacy protections. *Sears v. Mid Valley Enterprises*, LLC, No. 19-CV-00532-APG-DJA, 2021 WL 8015628 (D. Nev. Dec. 8, 2021) (allowing plaintiffs to pseudonymously sue a Nevada brothel for failing to pay minimum wage and overtime wages).

---

[6] Plaintiff found only a few cases where a plaintiff bringing TVPRA claims was not allowed to proceed under a pseudonym at least until trial; one was a factually unusual case involving workplace sexual harassment and domestic abuse committed by an individual perpetrator and did not implicate prostitution's stigma, *Fan v. Jiang*, No. 3:21-CV-00458-RCJ-CLB, 2023 WL 5846861 (D. Nev. Sept. 9, 2023), *vacated in part on other grounds*, *Fan v. Jiang*, No. 3:21-CV-00458-MMD-CSD, 2025 WL 28133, at *1 (D. Nev. Jan. 2, 2025), and another, *Ramsbottom v. Ashton*, No. 3:21-CV-00272, 2021 WL 2651188 (M.D. Tenn. June 28, 2021), was decided under a different standard, not an overall balancing test, but a rule that the plaintiff's privacy concerns must "substantially outweigh the presumption of open judicial proceedings." *Ramsbottom v. Ashton*, No. 3:21-CV-00272, 2021 WL 2651188, at *2 (M.D. Tenn. June 28, 2021) (emphasis in original) (internal citations omitted). It was not clear that either case involved sex trafficking, and they certainly did not involve persons in prostitution or otherwise in the sex trade.

In *Sears v. Mid Valley*, the plaintiffs brought a suit under the Fair Labor Standards Act that the brothel owners had failed to pay them minimum and overtime wages. One plaintiff joined and sought to proceed under a pseudonym. She agreed that, if the motion were granted, she would disclose her name to Defendants on a confidential basis. The Court granted the motion. *Sears v. Mid Valley Enterprises, LLC*, No. 19-CV-00532-APG-DJA, 2021 WL 8015628, at *1-3 (D. Nev. Dec. 8, 2021). There were no accusations of sexual abuse, let alone sex trafficking. *Id.* at *1.

Yet the risk from sex buyers was central to the court's assessment, as "disclosure of [Jane Doe's] identity may result in harassment from Johns or others trying to track her down outside of the legal brothel [.]" *Sears v. Mid Valley Enterprises, LLC*, No. 19-CV-00532-APG-DJA, 2021 WL 8015628, at *1 (D. Nev. Dec. 8, 2021). The plaintiff in *Sears* also indicated she would reveal her name to defendants, and that she would rather withdraw her opt-into the class action "than be named. This only legitimizes her concerns." *Id.* at *3.

Similarly, Jane Doe is also vulnerable to physical danger from "harassment from Johns or others trying to track her down outside the brothel," is also willing to "disclose her name to Defendants on a confidential basis," and has allowed her case to be dismissed rather "than be named," which "only legitimizes her concerns." *Sears v. Mid Valley Enterprises, LLC*, No. 19-CV-00532-APG-DJA, 2021 WL 8015628, at *1, *3 (D. Nev. Dec. 8, 2021).

32

And Jane Doe's allegations are more grave than those of the plaintiff in *Sears*. She alleges that the Brothel Defendants sex trafficked her, including one trafficker who was also a government official at the time, and that the Government Defendants protected the Brothel Defendants in defiance of federal law. ER-18—46. The combination of serious human rights abuses and official corruption with numerous abusive sex buyers only heightens any physical risks to Jane Doe of proceeding publicly.

The court thus abused its discretion when it "omit[ted] a substantial factor" by ignoring the physical dangers Plaintiff faces, failing to consider the severity of the harm at issue as required by the Ninth Circuit's standard.

Particularly in light of Plaintiff's allegations of Nevada's economic dependence on sex tourism, and the related effects of official corruption and profiteering, *see* ER-26—32, 44—46, it is an abuse of discretion for the court to both minimize the risk to Jane Doe of challenging such a system, and discount the public interest in seeing it stopped.

**III.  To the extent the district court considered the correct mix of factors, it committed clear errors of judgment by discounting the nonphysical harm to Jane Doe of proceeding publicly, and overstating the prejudice to the Brothel Defendants of Jane Doe proceeding under a pseudonym and protective order.**

A court abuses its discretion where it "commits a clear error of judgment in weighing the correct mix of factors." *Lytle*, 114 F.4th at 1023. Here, the court, to the

33

extent it considered the correct mix of factors, it committed clear errors of judgment by A) discounting the nonphysical harm to Jane Doe, as a sex trafficking victim, of proceeding publicly, and B) overstating the prejudice to the Brothel Defendants of Jane Doe proceeding under a pseudonym and protective order.

### A.    The court improperly discounted the nonphysical harm to Jane Doe, as a sex trafficking victim, of proceeding publicly.

Not only did the court wholly ignore the physical harm, it unreasonably dismissed the harms it did consider, by discounting Jane Doe's vulnerability, as a sex trafficking victim, to psychological and social harm.

### 1. The court unreasonably discounted Jane Doe's vulnerability, as a sex trafficking victim, to psychological and social harm.

As this Court explained in *Advanced Textile*, courts have allowed "plaintiffs to use pseudonyms in three situations": "(1) when identification creates a risk of retaliatory physical or mental harm; (2) when anonymity is necessary 'to preserve privacy in a matter of sensitive and highly personal nature,' and (3) when the anonymous party is 'compelled to admit [his or her] intention to engage in illegal conduct, thereby risking criminal prosecution[.]'" *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1068 (cleaned up).

These situations have included many cases where "sensitive and highly personal information" – for example relating to a person's sexuality—was at issue

34

without physical safety being a factor. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1068.

This was exactly the case here: Plaintiff Jane Doe alleged both "a risk of retaliatory physical or mental harm," from her sex traffickers, sex buyers, and their associates, and a need to preserve her privacy regarding "sensitive and highly personal" information due to being a sexual abuse victim and having been in legal prostitution. *See* Pls. Mot. For a Protective Order, *Doe v. Lombardo*, Dkt. No. 73 (May 30, 2024); Pls. Mot. For Reconsideration, *Doe v. Lombardo*, Dkt. No. 145 (Nov. 1, 2024), Exh. A.

Yet the court claimed to give "some weight" to Plaintiff's fear that sex buyers will track her down as well as her psychological vulnerability from being sex trafficked, but characterized these as "conclusory statements which apply broadly to anyone in the industry, regardless of the specifics of their claims." ER-62 (internal citations omitted).

The Court also noted embarrassment and especially social stigma attach to persons who have been in the commercial sex trade, but said Plaintiff's claims were "mostly generic and related to an unspecified risk of stigma all individuals bringing

sexual exploitation claims face." ER-62—63. The court concluded that Plaintiff's privacy interests and risk of retaliation did not warrant any protections. ER-65.[7]

But this was an unreasonable assessment of these factors, because nowhere does the standard require Plaintiff to prove, at the motion to dismiss stage, that her harms are unique to her, instead of similar to other victims subjected to the same severe circumstances. Trauma and risks from sex buyers are obviously common to all sex trafficking survivors who come forward; this has nothing to do with the severity or the reasonableness of their privacy and safety concerns. Notably, a sex buyer had attempted to intervene in the litigation and – by his own admission – improperly discover Jane Doe's identity by this point in the proceedings. ER-103—106.

It is hard to imagine the court reaching any other conclusion in other contexts; for example, it is difficult to imagine that if an ex-gang member was testifying in a

---

[7] The court further minimized Plaintiff's privacy concerns, citing a brief press conference given by Plaintiff's counsel when the lawsuit was filed: "Plaintiff's actions to publicize her case, including through press conferences and online publications, weigh against her argued need for privacy." ER-63. But that press conference not only does not contain any identifying information about the Plaintiff, it barely discusses the Plaintiff's story at all, relying almost entirely on the Complaint's claims about Nevada's systemic legalized prostitution regime. *See* Pls. Reply in Support of Mot. For a Protective Order, *Doe v. Lombardo*, Dkt. No. 85 at *8 (June 20, 2024). The Ninth Circuit's standards do not mandate denying privacy protections to plaintiffs who have not publicly disclosed identifying information.

36

criminal case for the government, that a court would conclude he did not need any special protection since he faced the exact risks any other ex-gang member turned state's evidence would.

These are not conclusory claims. The number of these abusers is vast and given the nature of their abuse, there is no way to track down and determine with certainty who may or may not pose a threat, the way one might with a single perpetrator whose whereabouts are known to that victim. That other sex trafficking victims face similar circumstances because they experienced the same type of abuse does not make Plaintiff's fear of retaliation generalized, conclusory, unreasonable, or any less severe.

The conclusion is supported by other cases from the same district, including one that did not even involve allegations as serious as those in this case, but considered that "prostitution carries an immense social stigma" and thus someone who had formerly been in a legal brothel needed privacy protections. *Sears v. Mid Valley Enterprises, LLC*, No. 2:19-CV-00532-APG-DJA, 2021 WL 8015628, at *1-*2 (D. Nev. Dec. 8, 2021).

The District of Nevada even noted that "the stigma faced by courtesans is greater than that faced by exotic dancers. . . . Roe 1 has explained that courtesans are more vulnerable to crime and social stigma, a vulnerability that, again, this Court

has no reason to question." *Sears v. Mid Valley Enterprises, LLC*, No. 2:19-CV-00532-APG-DJA, 2021 WL 8015628, at *1-*2 (D. Nev. Dec. 8, 2021).

Bafflingly, the Court cited this case, but chose instead to apply an employment case involving strip club dancers – exactly the circumstance in *Sears* – as a case about brothels, distinguished – to conclude that Jane Doe did not face any stigma worth protecting against. ER-63.

Even more to the point, in *Humphries v. Button*, as discussed above, the District of Nevada allowed a plaintiff to proceed pseudonymously and under a protective order against her rapists and traffickers. *Humphries v. Button,* No. 2:21-cv-01412-APG-EJY, 2022 WL 744483 (D. Nev. Mar. 11, 2022). Importantly, the court rejected the idea that the plaintiff needed to show medical evidence of the risk of "psychological injury," finding that "the inherent psychological, emotional, and reputational damage Plaintiff risks through litigating her case are sufficient to establish a privacy interest in proceeding anonymously." *Humphries v. Button*, No. 2:21-cv-01412-APG-EJY, 2022 WL 744483, at *3 (D. Nev. Mar. 11, 2022); *see also Doe v. Penzato*, No. CV10-5154 MEJ, 2011 WL 1833007, at *3-4 (N.D. Cal. May 13, 2011) (focusing on how having a victim's name be public would invade her privacy and exacerbate her trauma, which the court found sufficient for granting the pseudonym and protective order).

38

The Court also rejected the opposite conclusion reached in another district as "contrary to the Ninth Circuit's approach to anonymity in sexual assault cases," *Humphries v. Button*, No. 2:21-cv-01412-APG-EJY, 2022 744483, at *3 (D. Nev. Mar. 11, 2022) (internal citations omitted).

The allegations in the present case more than meet that standard: Plaintiff Jane Doe was also sex trafficked and faces the same "psychological, emotional, and reputational damage. . . sufficient to establish a privacy interest in proceeding anonymously." *Humphries v. Button*, No. 2:21-cv-01412-APG-EJY, 2022 WL 744483, at *3 (D. Nev. Mar. 11, 2022). The Court erroneously failed to analyze Jane Doe's "vulnerability to such retaliation" at all, and treated Jane Doe's fears as unreasonable without ever identifying what supposedly made them so. ER-62.

In characterizing Plaintiff's claims as "conclusory," the court also disregarded that the protective order motion was drawing out the implications of facts Plaintiff had already alleged, *compare* ER-18—46 *with* ER-61—64. The court all but ignored the complaint in its initial analysis, ER-61—64, and disregarded the declaration in its later analysis, ER-71—72 (stating that the court did not see how Jane Doe could face any danger from sex buyers if her name became public).[8]

---

[8] This is exacerbated by the court neither holding a hearing nor requesting further evidence in the nearly five months between the Plaintiff's filing and the court's order. *See* ER-99—106.

Finally, the court drew exactly the wrong inference about the systemic nature of the claims in Plaintiff's lawsuit. ER-64. If a person is challenging an abusive social structure, she faces potentially greater retaliation than someone who is just going after an individual person or even a single corporation. Therefore, more protection is warranted, not less.

Based on the above analysis, the court's analysis unreasonably minimized the psychological and social harm Plaintiff Jane Doe would face if she proceeded under her legal name.

### 2.  The court mischaracterized facts that Jane Doe alleged.

The Court was not "convinced that Plaintiff demonstrates a reasonable fear of retaliation or a threat of any severe harm," stating that Jane Doe could not reasonably fear retaliation from having her information made public if Brothel Defendants would be able to access her information under a protective order's terms, and suggesting retaliation was unlikely to occur if she was not still in prostitution. ER-62. The Court also said that as Brothel Defendants would eventually know Jane Doe's information under a protective order anyway, she had failed to explain how she thinks they would misrepresent her information. ER-62.

But Jane Doe did not say they would misrepresent her information (though she expects they will do that too), she said they would misuse it – specifically to harass and humiliate her in the public eye, which they all but threatened to do, *see,*

*e.g.*, Defs. Mot. to Dismiss, *Doe v. Lombardo*, Dkt. No. 5 at *17 (Feb. 25, 2024),

which is exactly what pseudonymity exists to prevent, *see also Does I thru XXIII v.*

*Advanced Textile Corp.*, 214 F.3d at 1068. Even though they would know her

information, a protective order would prevent Brothel Defendants from leaking the

information or deploying anonymous persons to harass Plaintiff.

The Court seems to suggest that Jane Doe's fears regarding the brothels that

sex trafficked her could only be reasonable if she was going back to the brothels and

faced economic retaliation and blacklisting in the sex industry. ER-62—63. But Jane

Doe has repeatedly said she is not going back to the brothels, and that her concern is

for her physical safety from her former pimps/traffickers as well as sex buyers. Pls.

Mot. For Reconsideration, *Doe v. Lombardo*, Dkt. No. 145 (Nov. 1, 2024), Exh. A.

In response to Plaintiff's offer to provide specific evidence of physical threats

in camera, Pls. Mot. For Reconsideration, *Doe v. Lombardo*, Dkt. No. 145 (Nov. 1,

2024), Exh. A at ¶¶ 36-37, the court also said that it was not going to "provide

repeated opportunities to present new evidence not adequately described," ER-72,

but the court never provided any opportunities to present evidence in the first place,

and if Jane Doe had given any more detail in her declaration, it would have

undermined her stated need for privacy.

### 3. The court made unsupported legal assertions and mischaracterized some of the case law it did cite.

The Court's analysis of the case law was misleading, stating that relevant cases regarding use of a pseudonym cut both ways. ER-63. But this is not true. The cases involving sex trafficking or brothels in this district all point one way: to privacy protections, and this case involves both sex trafficking and brothel prostitution. The cases the court cites against pseudonymity are all distinguishable. *See, e.g.*, *4 Exotic Dancers v. Spearmint Rhino*, No. CV 08-4038ABCSSX, 2009 WL 250054, at *4 (C.D. Cal. Jan. 29, 2009) (not allowing plaintiffs to proceed pseudonymously against the strip club employer because they were primarily concerned with economic retaliation by their employer, not social stigma); *Doe v. JBF RAK LLC*, No. 2:14-CV-00979-RFBGWF, 2014 WL 5286512, at *1 (D. Nev. Oct. 15, 2014) (denying pseudonymity where defendants already knew plaintiff's identity and plaintiff did not seek a protective order); *Doe v. City of Las Vegas*, No. 2:19-CV00382-GMN-BNW, 2019 WL 2601554, at *1-2 (D. Nev. June 25, 2019) (denying pseudonymity for plaintiff in a sexual harassment and gender discrimination lawsuit against fire department, where plaintiff herself had publicized the case, and sent out an evidentiary letter in her own name, but finding that the defendants were not prejudiced by negative publicity).

Additionally, *Spearmint Rhino*'s reasoning has been rejected by other similar cases, both of which the court cited but did not follow. *Roes 1-2 v. SFBSC Mgmt.,*

42

*LLC*, 77 F. Supp. 3d 990, 993 (N.D. Cal. Jan. 12, 2015) (criticizing *Spearmint Rhino* and allowing plaintiffs to bring claims pseudonymously against strip clubs for misclassifying them as independent contractors) ("The plaintiffs express a legitimate concern for their privacy and, more compelling for the anonymity analysis, an understandable fear of social stigmatization."); *Discopolus*, *LLC v. City of Reno*, No. 3:17-CV-0574-MMD-VPC, 2017 WL 10900550 at *1-2 (D. Nev. Nov. 16, 2017) (allowing plaintiff, who was employed at a strip club, to bring a First Amendment claim against government defendants under a pseudonym).

The court cited but disregarded the one case that was more on point. ER-63. *See, e.g.*, *Sears v. Mid Valley Enterprises*, LLC, No. 19-CV-00532-APG-DJA, 2021 WL 8015628 (D. Nev. Dec. 8, 2021) (allowing plaintiffs to pseudonymously sue a Nevada brothel for failing to pay minimum wage and overtime wages and distinguishing cases involving strip clubs.

Also, the Court cited *Doe v. Rostker*, saying: "That the plaintiff may suffer some embarrassment or economic harm is not enough." *Doe v. Rostker,* 89 F.R.D. 158 (N.D. Cal. 1981) (denying pseudonymity to plaintiffs challenging selective service registration). But this case had nothing to do with sexual abuse or exploitation at all, let alone prostitution and sex trafficking, and the full context of the quote the judge cited is this:

> A plaintiff should be permitted to proceed anonymously in cases where
> a substantial privacy interest is involved. The most compelling

> situations involve matters which are highly sensitive, such as social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of the plaintiff's identity. *That the plaintiff may suffer some embarrassment or economic harm is not enough.* There must be strong social interest in concealing the identity of the plaintiff.

*Id.* at 162. (emphasis added).

Plaintiff never cited "embarrassment or economic harm" as her justification, but consistent with *Rostker,* articulated both "highly sensitive" matters – serial sexual abuse during sex trafficking – and "real danger of physical harm" from the various persons who participated in her abuse. *Id.* The court's citation is thus misleading.

The court's mischaracterization of both Plaintiff's alleged facts and the relevant case law underscores how arbitrary its analysis was about the potential harm to Jane Doe.

Accordingly, the court abused its discretion by discounting the nonphysical harm to Jane Doe, as a sex trafficking victim, of proceeding publicly, particularly in light of the weight it gave to prejudice affecting the Brothel Defendants.

## B. The court overstated the prejudice to Brothel Defendants of Jane Doe proceeding under a pseudonym and protective order.

Finally, the ruling struck an unreasonable balance in assessing the pseudonymity factors by 1) not weighing the particular prejudice to the Brothel

Defendants at this early stage in the litigation, and 2) finding potential negative

publicity regarding the Defendants to be ultimately determinative.

### 1. The court did not precisely weigh the prejudice to Brothel Defendants at this stage in the litigation.

Prejudice to Defendants must be weighed precisely for each stage in the

litigation: "The court must also determine the precise prejudice at each stage of the

proceedings to the opposing party, and whether proceedings may be structured so as

to mitigate that prejudice." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d at

1068 (internal citations omitted).

The court did not analyze the precise prejudice to Brothel Defendants at such

an early stage in the case, before discovery had commenced. ER-64—65. In fact, the

court did not weigh anything precisely, simply concluding that because of "minimal

prejudice" to the brothels, the protective order and pseudonym should be denied.

ER-64—65.

But the very idea that prejudice to defendants must be determined with

precision as to the relevant stage of the litigation, and that the court must consider

how the proceedings can be structured to mitigate that prejudice implies that

prejudice can be overcome – and certainly cannot automatically determine that a

protective order should be denied. *Does I thru XXIII v. Advanced Textile Corp.*, 214

F.3d at 1068.

45

This is especially true, where, as here, the plaintiff was prepared to disclose her identity and any other information relevant to the Defendants' defense. Prejudice is mitigated where a plaintiff is willing to disclose her identity to a defendant under the terms of a protective order. *See, e.g., Doe v. Steele*, No. 20-CV-1818-MMA, 2020 WL 6712214, at *4 (S.D. Cal. Nov. 16, 2020) (finding "the prejudice against Defendants is low" because the plaintiff was willing to "provide her name to Defendants subject to a protective order.").

Also, discovery is largely not public anyway, especially where sexual assault victims are affected. *See Doe v. Penzato*, No. CV10-5154 MEJ, 2011 WL 1833007, at *4 (N.D. Cal. May 13, 2011) ("Given the nature of the allegations . . . it is likely that Defendants will have to redact information regardless of whether Plaintiff's identity is made public. This is the reality of civil litigation and not a reason for an alleged victim of sexual assault to disclose her identity.").

The Court recognized that the protective order's terms might "substantially mitigate" any prejudice to the Defendants but "even minimal remaining prejudice may be weighed under Rule 10(a)." ER-64—65.

Since precisely weighing prejudice based on the litigation's stage is a requirement in the Ninth Circuit, the court abused its discretion by finding that even minimal prejudice automatically negated a protective order and pseudonym.

46

## 2. The court arbitrarily found potential negative publicity regarding Brothel Defendants to be ultimately determinative.

Regarding prejudice to the Brothel Defendants, the Court ultimately concluded that Jane Doe "has actively sought to litigate this case in the public eye—as part of a series of similar cases brought by the same attorneys—lends credence to the Brothel Defendants' concern that a protective order limiting their ability to respond in the same public arena would be prejudicial." ER-65. Because the Court had previously found that Jane Doe's interests in privacy weighed "at most mildly in [her] favor," ER-64, and that the public interest was neutral or went in Defendants' favor, ER-64, prejudice to Defendants – specifically their ability to defend themselves in the media – ultimately determined the outcome, ER-64—65. This is an arbitrary and unreasonable conclusion for at least five reasons.

First, neither Defendants nor the Court have identified any actual or potential negative media coverage or other negative publicity resulting specifically from whether Plaintiff is a Jane Doe (as opposed to the nature of her claims against them). ER-64—65; Defs. Response to Pls. Mot. For a Protective Order, *Doe v. Lombardo*, Dkt. No. 75 at * 9 (Jun 7, 2024); Defs. Response to Pls. Mot. For Protective Order,

*Doe v. Lombardo*, Dkt. No. 79 (Jun. 13, 2024).[9] Neither the court nor the Defendants have even attempted to explain what it is about Jane Doe's legal name that would enhance either the public's understanding of the issues or enable the Defendants to more adequately defend themselves.

In *Advanced Textile*, the Ninth Circuit noted that the "defendants argued that they face tremendous adverse publicity as a result this lawsuit, but do not explain how knowledge of plaintiffs' identities will enable them to counter that adverse publicity." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 at 1072; *see also Humphries v. Button*, No. 2:21-CV-01412-APG-EJY, 2022 WL 744483 at *4 (D. Nev. Mar. 11, 2022) (internal citations and quotation marks omitted) ("Defendants face public exposure regardless of whether Plaintiff's identity is made public, and the allegations against them would remain the same.").

---

[9] Since this case and pseudonym motion were filed, A&E released a six-part series in June 2025, "Secrets of the Bunny Ranch," specifically exposing the Nevada brothels and government complicity – that while it exposes Nye County's protection for pimps and failure to regulate the brothels, does not implicate this case at all. *Secrets of the Bunny Ranch* (A&E June 12, 2025). In other words, the most damning current press about Nevada's brothels is wholly unrelated to this case, which makes it absurd to suggest that Defendants need to bandy about a victim's name in public to defend themselves in the public eye. While this evidence was not before the Court – because it did not exist yet – it certainly underscores how meritless Defendants' claims about prejudice are.

Similarly, Defendants in this case did not explain how knowing and publicly disclosing Plaintiff's identity would "enable them to counter . . .adverse publicity." *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1072. More to the point, Defendants never argued that they faced "tremendous adverse publicity" in the first place, nor did the court below conclude as much – both the court and the Brothels merely talked about how it would theoretically be difficult to counter bad press if they got any. ER-64—65; Defs. Response to Pls. Mot. For Protective Order, *Doe v. Lombardo*, Dkt. No. 79 at *7-8 (Jun. 13, 2024).

Second, Defendants do not need to be able to personally discredit the victim to defend themselves against allegations that are primarily about their overall patterns and practices in their brothels, and not merely a specific, isolated incident that happened to this Jane Doe. ER-20—22, 33—46. Brothel Defendants could have defended themselves in the public eye a year and a half ago by providing evidence that they do not engage in debt bondage and other coercive policies that Jane Doe alleges, but they have not.

Third, Defendants made it abundantly clear in their own filings that they were not concerned so much with defending themselves as using the press to investigate and discredit Jane Doe. They insinuate that they want to be able to use the media to harass and intimidate her. *See, e.g.*, Defs. Mot. to Dismiss, *Doe v. Lombardo*, Dkt. No. 5 at *17 (Feb. 25, 2024) ("[T]he interests of the press, and the press's ability to

research the litigant's background (which may bear on matters pertaining to credibility) and Plaintiff's potential motivations for suing, are also implicated . . . And since Plaintiff's attorneys have been so keen on generating press coverage for this abusive suit, it seems only fair that the press should know who to examine in its efforts to ferret out the truth.); Defs. Response to Pls. Mot. For Protective Order, *Doe v. Lombardo*, Dkt. No. 79 at *7-8 (Jun. 13, 2024) (internal citations omitted) ("Without the ability to use Plaintiff's name, Defendants are forced to litigate with their hands behind their backs. Doing so would hinder Defendants' ability to enlist the press's interest in the case such a Plaintiff's [sic] has done with impunity here . . . . [O]penness in judicial proceedings allows the public and the press to research the litigants' backgrounds and weigh their credibility and true motivations for suing.").

It was an abuse of discretion for the judge not only to not see these threats as a red flag further supporting protection, but as a reason to deny protection altogether, especially when the Brothel Defendants have not even made a serious attempt to defend themselves in the media. Moreover, the appropriate vehicle for investigating Jane Doe's claims is discovery, not a public relations campaign. Defendants' evident desire to conduct extrajudicial investigations into sex trafficking victims during litigation is not a basis for denying pseudonymity or a protective order.

Fourth, the court refused to consider other ways to mitigate any supposed prejudice to Defendants, such as making the protective order mutual or limiting it to

50

the discovery period and revising it based on the parties' submissions before summary judgment. ER-64—65. Notably, Defendants never sought a protective order for themselves, which again suggests that they were concerned less with defending themselves and more with punishing Jane Doe.

Fifth, given especially that the remaining defendants are the Brothel Defendants, it is not clear what discernible harm they face from bad press – to make their publicity concerns determinative assumes – dubiously – that pimps have a reputation to lose.[10]

The court certainly did not weigh Defendants evident desire to try Jane Doe in the media against Jane Doe's own physical safety, which is an abuse of discretion: "a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 798 (9th Cir. 2005) (defining abuse of discretion) (cleaned up).

The court thus prioritized the Brothels' reputational concerns over Jane Doe's physical security, even though publicity is not part of the standard, *see Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1072, and no trial is imminent.

---

[10] This is especially true for Defendant Chicken Ranch, against whom trafficking claims are already proceeding in another case, *Williams v. Sisolak*, No. 2:21-CV-01676-APG-VCF, 2022 WL 2819842, at *6-7 (D. Nev. July 18, 2022).

The Court's order pits Jane Doe's desire to seek justice for herself against her safety. As described above, the balance of cases protect trafficking survivors with very few exceptions. Thus, while pseudonymity is not a standard remedy in ordinary litigation, in this case, it is the court's denial that is extraordinary.

Accordingly, it was an abuse of discretion for the court to treat the Brothel Defendants' claims about negative publicity as determinative for deciding the pseudonymity and protective order motion.

Based on the above, the court abused its discretion by not sufficiently considering how a protective order might mitigate any prejudice to the Brothel Defendants, and by giving undue weight to their public relations concerns.

The court thus made a number of errors in assessing the correct factors that it did consider, discounting the psychological and social harm that Jane Doe would be subjected to as a sex trafficking victim forced to litigate under her legal name, and unreasonably prioritizing Brothel Defendants' concerns about negative media coverage.

Accordingly, the court abused its discretion in three ways: it relied on a factor—public assessment of a victims credibility—that has no basis in law; it omitted a substantial factor: Jane Doe's physical vulnerability to violence; and it unreasonably weighed Brothel Defendants' reputational interests over Jane Doe's need for protection and the public's interest in incentivizing civil rights lawsuits.

52

## CONCLUSION

This case presents a stark choice between two visions of American justice. In one vision, the federal courts serve as a refuge where the most vulnerable victims can seek redress for the gravest human rights violations, protected by legal safeguards that ensure safety does not become the price of justice.

The district court's decision represents a fundamental departure from both Ninth Circuit precedent and federal anti-trafficking policy. By denying Jane Doe the basic protection of proceeding under a pseudonym—protection routinely granted to trafficking survivors across federal courts—the district court created an unprecedented and dangerous rule: the more systematic and government-enabled the abuse, the less protection victims receive. This perverse logic rewards the worst violators while punishing those courageous enough to challenge them.

The implications extend far beyond this case. The district court's approach sends a clear message to every trafficking survivor, every whistleblower, and every civil rights plaintiff who dares to challenge government complicity in human rights violations: if you seek justice against powerful interests, you will be left to face retaliation alone. This message fundamentally undermines the constitutional promise that all persons have meaningful access to the courts.

This Court should not permit such a result. The Ninth Circuit's precedent in *Advanced Textile Corp.* and the overwhelming weight of federal authority protecting

53

trafficking survivors provide clear guidance: Jane Doe's need for protection far outweighs any prejudice to the Brothel Defendants who openly threatened to investigate and expose her.

For the foregoing reasons, the District Court's denial of Plaintiff's motion to proceed under a pseudonym and for a protective order and related dismissal of the case should be reversed, and the case remanded for consideration of Plaintiff's claims on the merits.

Dated: August 8, 2025      By:    /s/ Christen M. Price
       Christen M. Price
       Benjamin W. Bull
       Dani Bianculli Pinter
       Victoria Hirsch
       NATIONAL CENTER ON
       SEXUAL EXPLOITATION
       1201 F Street NW, Suite 200
       Washington, DC 20004
       Telephone: (202) 393-7245
       cprice@ncoselaw.org
       bbull@ncose.com
       dpinter@ncoselaw.org
       vhirsch@ncoselaw.org

       Jason D. Guinasso
       GUINASSO LAW, LTD.
       5371 Kietzke Lane
       Reno, NV 89511
       Telephone: (775) 853-8746
       jason@guinassolaw.com

       *Attorneys for Plaintiff-Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 25-3455

I am the attorney or self-represented party.

**This brief contains** | 12,513 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Christen M. Price | **Date** | 08/08/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                    *Rev. 12/01/22*

## STATEMENT OF RELATED CASES

Counsel is unaware of any related cases pending in this Court.

Signature   /s/ Christen M. Price          Date   August 8, 2025